UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MCDONALD'S CORPORATION,<br>    Plaintiff,<br><br>v.<br><br>LOUIS RAPPAPORT and MARSHALL J.<br>COHEN, Trustees of the Highlander Plaza<br>Realty Trust, and HIGHLANDER PLAZA<br>LIMITED PARTNERSHIP,<br>    Defendants. | Civil Docket Number: |

## COMPLAINT

This is a complaint for injunctive, declaratory, and other relief arising from Defendants' breaches of a restrictive covenant and other provisions of a lease for certain property located in Salem, Massachusetts.

### PARTIES

1. Plaintiff, McDonald's Corporation ("McDonald's"), is a Delaware corporation with a principal place of business in Oak Brook, Illinois.

2. Defendant Louis Rappaport is a trustee of the Highlander Plaza Realty Trust ("Realty Trust") and, on information and belief, a resident of New Jersey.

3. Defendant Marshall J. Cohen is a trustee of the Realty Trust and, on information and belief, a resident of New Jersey.

4. Defendant Highlander Plaza Limited Partnership ("Limited Partnership") is a Massachusetts registered limited partnership with its principal place of business in Boston.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court because complete diversity exists, the matter in controversy, exclusive of interest and costs, exceeds the sum specified by 28 U.S.C. § 1332, and each of the Defendants has, within the time period relevant to the cause of action stated herein, transacted business within Massachusetts, including becoming the lessors under a certain lease detailed below.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

7. McDonald's entered into a Ground Lease ("Lease") dated May 7, 1993, as the tenant, a copy of the which (with the exception of lease exhibits B and B-1, plans of the plaza and the site of the restaurant) is attached hereto as Exhibit 1.

8. The purpose of the Lease is to permit McDonald's to operate a McDonald's Restaurant on certain premises known as Highlander Plaza ("Plaza") in Salem, Massachusetts. A McDonald's restaurant has been in continuous operation at that location since 1994.

9. The McDonald's restaurant in the Plaza is a "so-called fast food restaurant" and "food service establishment" with both "drive-in" and "walk-up" service. It has hours of operation from 5:AM to midnight, and prepares and serves the types of food and beverages that McDonald's restaurants are well known for, including a wide variety of breakfast and lunch and dinner items, coffees, and desserts, in an alcohol-free, family-friendly environment.

10. The landlord named in the Lease is the Limited Partnership. However, on or about March 23, 1994, an Agreement Amending Lease (attached hereto as Exhibit 2)

was recorded in the Essex South Registry of Deeds (document 296941, Book 12491, page 43). The Agreement Amending Lease provides that, as of December 1, 1993, the landlord's name under the Lease is changed from the Limited Partnership to the Realty Trust.

11. Three other documents were also recorded on or about March 23, 1994: a Memorandum of Lease (document 296940, Book 12491, page 38, attached hereto as Exhibit 3); a Covenant Not to Compete (document 296942, Book 12491, page 46, attached hereto as Exhibit 4); and a Non-Disturbance, Attornment and Subordination Agreement (document 296943, Book 12491, page 50, attached hereto as Exhibit 5). Each of these also names the Realty Trust as the landlord.

12. The Realty Trust was established pursuant to a Declaration of Trust dated December 23, 1992, and recorded in the Essex South Registry of Deeds (document 280466, book 11672, page 5). Defendant Rappaport and one Mark Perechocky were named as the original trustees. However, Defendant Cohen apparently replaced Perechocky on or about January 13, 1997. The Appointment and Acceptance of Trustee was recorded in the Essex South Registry of Deeds on or about February 10, 1997 (book 13968, page 154), and the Resignation of Trustee was recorded in the same registry on or about the same date (book 13968, page 157). Thus, Defendants Rappaport and Cohen appear to be the sole trustees of the Realty Trust. The Declaration of Trust specifies the following "mailing address" for the original trustees: "c/o GP Properties, Inc., 1000 Maplewood Drive, Suite 110, Maple Shade, New Jersey, 08052." No residential address is specified, and no new address for Defendant Cohen is found in the registry records. At

3

this time, the Maple Shade, New Jersey, address constitutes the only known address for the trustees of the Realty Trust.

13. The Lease specifies that "any notice, demand or communication" to the other party is to be in writing to the Limited Partnership, c/o GP Properties at the same Maple Shade, New Jersey, address as is stated in the Declaration of Trust described in the preceding paragraph. By letter dated January 3, 2006, the Limited Partnership gave notice of a change of address, specifying that effective December 4, 2006, "rent payments and legal notices" shall be sent to the Limited Partnership, c/o Jager Management, Inc., 610 Old York Road, Jenkintown, PA 19046.

14. Article 4.F of the Lease provides in relevant part as follows:

> **Covenant Not to Compete and Setback Restriction**: Landlord covenants and agrees that no property now or hereafter owned, leased or controlled, directly or indirectly, by Landlord or, if Landlord is a corporation, any subsidiary of Landlord, adjacent or contiguous to the Demised Premises or within two (2) miles of the perimeter of the Demised Premises (whether or not such other property is subsequently voluntarily conveyed by Landlord) shall, during the term of this Lease and any extensions, be leased, used or occupied as a so-called fast food restaurant, food service establishment, drive-in or walk-up eating facility (herein the "Restrictive Covenant"), except that the Restrictive Covenant shall not apply to any use by the tenants listed and described on Exhibit C attached hereto and made a part hereof or to any exclusives or restrictions contained in the lease for any tenant so listed and described or any renewal or replacement thereof for the same or similar use. Moreover, the Restrictive Covenant shall not apply to any use of or lease of property subsequently acquired directly or indirectly by the Landlord within said radius existing on the date of such acquisition or to any replacement or renewal of such lease.
>
> . . .
>
> It is mutually agreed that the covenants set forth above shall run with the land, and if Tenant shall purchase the Demised Premises pursuant to any right of first refusal to purchase in this Lease, such covenants shall remain in effect for a period of twenty (20) years

4

> from the date of closing under such right. Landlord agrees to provide legal descriptions of all property involved and execute recordable documents in form and substance reasonably acceptable to Landlord (prepared at Tenant's sole expense), if required by Tenant, to effectuate the foregoing.
>
> In addition, Tenant shall be entitled to injunctive and other appropriate relief, for any violation by Landlord under this Article 4.F.

Exhibit C of the Lease lists the following other tenants: Taco Bell Corp.; The Ground Round, Inc.; Jangs, Inc.; J.G.L.Z. Enterprises, Inc., d/b/a Silver Star Pizza and Italian Restaurant; Shaw's Supermarkets, Inc.; CVS Highland Plaza, Inc.; Caves Marchand, Inc.; Jenny Craig, Inc.; and Boston Chicken as a contemplated tenant.

15. Similarly, the Covenant Not to Compete recorded in the registry of deeds provides in relevant part as follows:

> THEREFORE, Landlord covenants and agrees:
>
> 1. That no property (other than the Demised Premises) now or hereafter owned, leased or controlled, directly or indirectly, by Landlord, or, if Landlord is a Corporation, any subsidiary of Landlord, adjacent or contiguous to the Demised Premises or within two miles of the perimeter of the Demised Premises as shown on Exhibit B (whether or not such other property is subsequently voluntarily conveyed by Landlord) shall, during the term of the Lease and any extensions of it, be leased, used or occupied as a restaurant, eating establishment, drive-in or walk-up eating facility, except any use by the following tenants:
>
> **Boston Chicken, Taco Bell, The Ground Round, Jangs, Silver Star Pizza and Italian Restaurant, Shaw's Supermarket, CVS Highland Plaza, Inc., Caves Marchand, Jenny Craig**
>
> . . .
>
> Landlord agrees that the covenants set forth in (1) and (2) shall run with the land and shall inure to the benefit of the Tenant and shall be binding upon the Landlord and the Landlord's heirs, executors, successors and assigns.

16. One or more of the Defendants, as landlord under the Lease, has planned to install a Starbucks Coffee food-service establishment in the Plaza, at a location currently occupied by a Blockbuster video store. Starbucks prepares and sells coffee, tea, and sells various breakfast, lunch, and snack items. On information and belief, the Starbucks restaurant contemplates installation of drive-in service and is in the process of securing permits for the same. Starbucks thus qualifies as a "so-called fast food restaurant, food service establishment, drive-in or walk-up eating facility."

17. One or more of the Defendants, as landlord under the Lease, has contracted to install an International House of Pancakes Restaurant ("IHOP") at the location formerly occupied by a Ground Round restaurant. The Ground Round restaurant was open for business as recently as three weeks ago, when it closed this location; construction is proceeding on a new Ground Round a short distance away in Salem. Immediately after the Ground Round vacated its former location, work began to renovate the building for use as an IHOP, and this construction is underway and, in fact, progressing rapidly.

18. The Ground Round operated a family-style service restaurant including a lounge, similar to restaurants operating under the names Matt Garretts, Applebee's, and 99 Restaurant. Ground Round served alcohol and was open for lunch and dinner, not breakfast.

19. By contrast, IHOP prepares and sells not only pancakes, but also a variety of breakfast items, as well as a more limited menu of lunch and dinner items and desserts. IHOP does not serve alcoholic beverages and its restaurants do not include a lounge. IHOP is, consequently, quite unlike the Ground Round, Matt Garretts, Applebee's, and

99 Restaurant, and is a food-service establishment that falls within the scope of the restrictive covenant contained in Article 4.F.

20.     Both the proposed Starbucks and the proposed IHOP are within the scope of the geographic restriction of the restrictive covenant in Article 4.F of the Lease, in that they are "adjacent or contiguous to the Demised Premises or within two (2) miles of the perimeter of the Demised Premises." In fact, the proposed Starbucks would be directly adjacent to the McDonald's restaurant in the Plaza and the IHOP is under construction directly across a road from McDonald's in the Plaza.

21.     McDonald's has advised Defendants in writing that it considers the installation of a Starbucks and/or IHOP restaurant to be breaches of Article 4.F of the Lease. Defendants have denied breaching the Lease and have refused to terminate the IHOP construction. McDonald's is without knowledge of the extent to which matters have proceeded in the installation of the Starbucks, as Defendants have refused to discuss this matter in their written correspondence with McDonald's. McDonald's learned of the plans for the Starbucks only through the Salem building inspector, who mentioned the Starbucks plans on McDonald's inquiries relative to the planned IHOP.

## COUNT I
### (Preliminary Injunction)

22.     McDonald's restates the allegations contained in paragraphs 1 through 21.

23.     Both the Starbucks and the IHOP restaurants constitute fast food restaurants, food-service establishments, and/or drive-in or walk-up eating facilities under the plain terms of Article 4.F of the Lease.

24.     None of the exceptions specified by the Lease or the recorded Covenant Not to Complete applies.

7

25. Article 4.F of the Lease and the recorded Covenant Not to Compete prohibit the Defendants from leasing to, or permitting the establishment of, a Starbucks or an IHOP at the Plaza.

26. There is a substantial likelihood that McDonald's will succeed in establishing that Defendants are in breach of the Lease and the recorded Covenant Not to Compete by permitting the establishment of the Starbucks and/or IHOP restaurants.

27. McDonald's will be irreparably harmed if the injunction is denied because construction of the Starbucks and IHOP restaurants will advance and will likely be completed by the time this case is finally determined on the merits, with the consequent substantial harm to McDonald's business interests.

28. In contrast, there is no harm to Defendants if they are forced to comply with the terms of the Lease.

29. It is in the public interest that the terms of Article 4.F and the recorded Covenant Not to Compete be enforced.

30. Pursuant to Article 4.F of the Lease, Defendants have acknowledged that McDonald's is entitled to an injunction for Defendants' violation of Article 4.F.

### COUNT II
### (Permanent Injunction)

31. McDonald's restates the allegations contained in paragraphs 1 through 30.

32. Article 4.F of the Lease and the recorded Covenant Not to Compete prohibit the Defendants from leasing to, or permitting the establishment of, a Starbucks or an IHOP at the Plaza.

33. Monetary damages and other remedies at law are not sufficient to compensate McDonald's for the harm it would sustain if Defendants were permitted to breach Article 4.F of the Lease and the recorded Covenant Not to Compete.

34. A order permanently enjoining Defendants and their successors from permitting the establishment of a Starbucks or IHOP in violation of the terms of the Lease and the recorded Covenant Not to Compete is in the public interest.

35. Pursuant to Article 4.F of the Lease, Defendants have acknowledged that McDonald's is entitled to an injunction for Defendants' violation of Article 4.F.

### COUNT III
### (Breach of Lease)

36. McDonald's restates the allegations contained in paragraphs 1 through 35.

37. Defendants' conduct constitutes a breach of the Lease.

38. As a result of Defendants' breach of the Lease, McDonald's has sustained damages.

### COUNT IV
### (Declaratory Judgment)

39. McDonald's restates the allegations contained in paragraphs 1 through 38.

40. An actual controversy exists between McDonald's and Defendants regarding whether operation of a Starbucks and/or an IHOP restaurant violates the provisions of the Lease and the recorded Covenant Not to Compete.

41. Declaratory relief will resolve this controversy.

WHEREFORE, McDonald's requests that the Court enter judgment in its favor on all counts of this complaint and grant the following relief:

a. issue a preliminary injunction enjoining Defendants from permitting the establishment of a Starbucks restaurant in the Plaza and from permitting the establishment of an IHOP restaurant in the Plaza;

b. issue a permanent injunction enjoining Defendants and their successors from permitting the establishment of a Starbucks or IHOP restaurant in the Plaza in violation of the terms of the Lease and the recorded Covenant Not to Compete;

c. enter a declaration that the establishment of a Starbucks restaurant and the establishment of an IHOP restaurant in the Plaza constitutes a breach of the Lease and a violation of the recorded Covenant Not to Compete;

d. award such other and further relief as the Court deems just and proper.

MCDONALD'S CORPORATION,
by its attorneys,

*/s/ Martin F. Gaynor III*

Martin F. Gaynor III, BBO No. 564384
Nicholas D. Stellakis, BBO No. 644981
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA 02110
(617) 737-3100
Email: mgaynor@cmjlaw.com

183903